UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANGELA SALAS,

              Plaintiff,

v.

NEW YORK CITY DEPARTMENT OF
INVESTIGATION, *et al.*,

              Defendants.

No. 16-CV-8573 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

Angela Salas brings this action against her employer, the New York City Department of Investigation ("DOI"), and five individuals at DOI, asserting various employment-discrimination claims under Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990. Salas was proceeding *pro se* when she filed her Complaint (Dkt. 2) and her Amended Complaint (Dkt. 18), but *pro bono* counsel later entered an appearance on her behalf. Defendants now move to dismiss Plaintiff's Amended Complaint. For the reasons explained below, that motion is denied in part and granted in part.

## BACKGROUND

The following facts are drawn from the Amended Complaint, the original Complaint, and the documents attached to the original Complaint.[1] All non-conclusory facts are assumed to be true for the purposes of resolving Defendants' motion to dismiss. *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).

---

[1] Courts generally rely solely on a plaintiff's most recently amended complaint, on the theory that it supersedes all others. *See Elliott v. City of Hartford*, 649 F. App'x 31, 32 (2d Cir. 2016). That rule does not typically extend to *pro se* litigants. *See generally id.* Here, the Court will consider the original and amended complaints together as the operative pleading for this motion. *See Emerson v. City of New York*, 740 F. Supp. 2d 385, 388 n.2 (S.D.N.Y. 2010).

Salas is Jewish and has a pronounced stutter. In 2008, she began working in a clerical role for the Fingerprint Division (the "Division") of DOI. In that role, she regularly observes "members of the Hasidic sect of the Jewish religion" come in for fingerprinting. Am. Compl. ¶ 5. Men who are Hasidic have a religious objection to being touched by women and, thus, an objection to being fingerprinted by them. *Id.* In 2013, Salas wrote a letter to the Director of the Division, Danielle Desrouleaux, about the "contemptuous and rude behavior" of two of her coworkers, Maria Calvi and Judith Marrero, who Salas said had been "display[ing] obvious disrespect toward [the] visiting Hasidic Jews." Dkt. 2 at 16.

The "primary incident" that Salas complains of took place in September 2015. Am. Compl. ¶ 8. According to Salas, Maria Calvi approached "a Hasidic man who came to the Division for fingerprinting" and "suddenly grabbed" the man's hand, proceeding to "forcibly" take his fingerprints over his screamed objections. *Id.* Salas "heard the commotion" in the fingerprinting area that adjoins her work space. Dkt. 2 at 15. She attempted to interfere, "beseech[ing] her Division colleague to let go of the man's hand," but Calvi "sneered at her, made vulgar remarks, and carried on" with the fingerprinting. Am. Compl. ¶ 9. Calvi allegedly "stuck her nose" in Salas's face and told Salas that it was "none of [Salas's] business" and that Salas could "report [her] to the Director!" Dkt. 2 at 15, 26. Salas went to management to report the September incident. After Salas reported it, Calvi confronted her, shouting in a "menacing manner" to "[g]et off [her] face." *Id.* at 26. Salas alleges that her reports about the treatment of the Hasidic man were "met with ridicule and indifference" and that "nothing was done" despite multiple follow-ups. Am. Compl. ¶ 10. According to Salas, the incident with the Hasidic man "was merely one of many which occurred at the Division over time," and "a hostile work environment and religious

2

discrimination has existed and been pervasive at the Division both before and after this incident." Am. Compl. ¶ 11.

In November 2015, Salas's supervisor wrote a formal warning to Salas about the September 2015 incident. In the warning, the supervisor criticized Salas for "[b]erating" Calvi and "tak[ing] matters into [her] own hands" rather than simply notifying her supervisor. Dkt. 2 at 47. In the Amended Complaint, Salas refers to the warning as a "derogatory note," which she alleges was placed in her file as a result of her complaints about the September incident. *See id.* at 51; Am. Compl. ¶ 12. A few weeks later, on December 14, Salas complained to DOI's Assistant Commissioner for Administration, Edgardo Rivera, that Calvi at some point had "humiliated and embarrassed" Salas "by mimicking [her] murmuring disability in front of co-workers." Dkt. 2 at 24. In that same complaint to Rivera, Salas asserted that she had been "victimized" for reporting the incident with the Hasidic man. *Id.* at 24. On February 1, 2016, Salas was notified that she would not receive a raise. *Id.* at 14.

In April 2016, Salas filed a formal charge of discrimination with the EEOC, identifying retaliation, religion, and disability as the grounds for the charge. She provided the following description of the discriminatory conduct that she claimed to have experienced:

> Maria Calvi improperly handled an Orthodox Jewish male. (She physically abused him and spoke to him in a harsh manner. She did not address any other patrons harshly). I reported the mistreatment to my supervisor and I received a command discipline. I filed an internal EEO complaint regarding the mistreatment of the Jewish male . . . but it was never addressed.
>
> Ms. Calvi makes fun of my stuttering and she intimidates me on a daily basis. I have reported the harassment to management and nothing was done to stop the harassment. In retaliation for filing my internal discrimination complaints I have not received a raise as all of the other employees in my unit[.]

3

*Id.* at 28–29. Allegedly as a result of this charge, DOI gave Salas a raise in June 2016. *Id.* at 21. Even after Salas received the raise, however, she corresponded several times with the EEOC. On August 5, 2016, she sent the EEOC a letter that, among other things, noted how "Calvi . . . mimic[s] her] on a daily basis." *Id.* at 13.

Salas further asserts that, after the September 2015 incident and her complaints about it, "she has repeatedly been mocked, ridiculed, and made fun of" at the Division. Am. Compl. ¶ 12. She alleges that someone removed some of her files, that the "derogatory note" (apparently the written warning described above) "was put into her personnel file," that "she has suffered abuse," and that "her religion has repeatedly been mocked." *Id.* She concludes that she "has suffered discrimination and abuse at the Division on account of her stuttering disability and her religion" and that she has "suffered damages as a result." *Id.* ¶ 14.

On November 2, 2016, Salas, proceeding *pro se*, filed the Complaint in this action, asserting claims of employment discrimination under the ADA and Title VII. Shortly after Salas filed her Amended Complaint, *pro bono* counsel entered an appearance on her behalf. Defendants now move to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. 26. Salas, through counsel, filed her opposition, and Defendants replied.

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

4

plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion, the question is "not whether [the plaintiff] will ultimately prevail," but rather "whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011) (internal quotation marks omitted). In answering this question, the Court must "accept[] all factual allegations as true, but giv[e] no effect to legal conclusions couched as factual allegations." *Stadnick*, 861 F.3d at 35 (quoting *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010)). This Court must construe a *pro se* plaintiff's pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). But even *pro se* litigants must still "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 Fed. App'x 60, 61 (2d Cir. 2010) (citations omitted).

## DISCUSSION

### I. Title VII and ADA Claims Against the Individual Defendants

As an initial matter, Defendants argue that Salas's claims against the individual defendants under Title VII and the ADA must be dismissed. As Defendants correctly point out, individuals cannot be liable under either Title VII or the ADA. *See Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010); *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) (per curiam). Thus, Plaintiff's Title VII and ADA claims against the individuals in this case are dismissed with prejudice.

### II. Title VII and ADA Claims Against DOI

Plaintiff's primary argument is that DOI violated Title VII and the ADA by subjecting her to a hostile work environment on the basis of her religion and disability, by discriminating against her on those bases, and by retaliating against her for complaining about the discrimination.[2]

---

[2] Plaintiff's original Complaint also appears to seek relief for the failure to accommodate her disability. But she does not attempt to defend that claim in her opposition papers. Nor could she: nowhere in her Complaint, Amended Complaint, or attachments does she allege facts indicating

5

## A. Hostile Work Environment Claims

DOI argues that Salas's hostile-work-environment claims must be dismissed because she fails to plead that she suffered workplace harassment that was sufficiently severe or pervasive under either Title VII or the ADA. (DOI appears to concede for the purposes of this motion all other elements of the causes of action.) To state a claim for a hostile work environment under Title VII, Salas must plausibly allege that her "workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (citation omitted). Courts determine whether claims cross the "threshold" of severity and pervasiveness by "examin[ing] the case-specific circumstances in their totality and evaluat[ing] the severity, frequency, and degree of the abuse." *Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 203 (2d Cir. 2014) (citation omitted). The Second Circuit has "not yet decided whether hostile-work-environment claims are cognizable under the ADA," but, if they are, then the same standard applies. *Dollinger v. New York State Ins. Fund*, No. 16-4068-CV, 2018 WL 832904, at *3 (2d Cir. Feb. 13, 2018); *see also Lewis v. Blackman Plumbing Supply L.L.C.*, 51 F. Supp. 3d 289, 309 (S.D.N.Y. 2014). As have other courts and the parties in this case, this Court assumes for the sake of this motion that the ADA permits hostile-work-environment claims.

### 1. Religion-Based Claim

Salas contends that her workplace was so permeated by harassment on the basis of her religion that she has stated a claim for a hostile work environment under Title VII. *See Rivera,*

---

that she requested accommodations from the Division or DOI, much less that she was denied them. *See Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 18 (2d Cir. 2015).

743 F.3d at 20. As an initial matter, the Court need not credit her mere conclusions that "a hostile work environment and religious discrimination has existed and been pervasive at the Division" or that she "has suffered discrimination and abuse at the Division on account of . . . her religion." Am. Compl. ¶¶ 11, 14. Rather, Salas must plausibly allege facts that would establish the presence of religious animosity and "that a reasonable employee in [her] position would have experienced the conditions of [her] employment as altered for the worse" due to workplace hostility. *See Feingold v. New York*, 366 F.3d 138, 151 (2d Cir. 2004). "Offhand" and "isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment." *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004).

Salas has failed to allege even a single instance where she or a coworker was personally harassed on the basis of religion. The closest she comes to alleging religious harassment against her is a generalized assertion that "[h]er religion has repeatedly been mocked." This assertion, however, does not specify whether anyone at her office mocked her or others; what the "mocking" consisted of; how the mocking affected the conditions of her work environment, if at all; or how often the purportedly "repeated" mocking occurred. *See Alleyne v. NAACP Legal Def. & Educ. Fund, Inc.*, No. 14-CV-6675 MKB, 2015 WL 6869731, at *11 (E.D.N.Y. Nov. 6, 2015) (dismissing without prejudice a *pro se* plaintiff's hostile work environment claims where she "assert[ed] that she was harassed by her co-workers" but did "not indicate *how* she was harassed or allege any specific conduct").

The only personal abuse to which Salas points—when Calvi allegedly sneered at her, made vulgar remarks, and said some other things in a menacing manner in response Salas's objections to the September 2015 incident—does not suggest the existence of a religiously hostile work environment. Those statements, or the little we know about them, focus on Salas's interference in

7

and decision to report Calvi's conduct, not on Salas's religion. *See Perez v. Commc'ns Workers of Am.*, 210 F. App'x 27, 31 (2d Cir. 2006) (noting that "many of the instances of verbal abuse" were "unrelated" to the plaintiff's protected characteristics, and holding that the remaining "isolated examples" of "ethnic or religious animus or insensitivity on the part of various coworkers" were not sufficiently severe or pervasive). Moreover, the comments appear to have been isolated to the September 2015 incident. *See id.*; *see also Shultz v. Congregation Shearith Israel of City of New York*, 867 F.3d 298, 309 (2d Cir. 2017). The limited and vague allegations about religious harassment in Salas's pleadings do not plausibly allege that she was the victim of a hostile work environment.

Salas responds that she has alleged several instances where she saw, and attempted to interfere with, coworkers abusing male Hasidic visitors to the Division in the "[f]ingerprint area" that "adjoin[s]" Salas's workspace. Dkt. 2 at 15. But Salas apparently does not work directly with either the Hasidic visitors or the alleged abusers in that area. Some courts have held that "evidence of discriminatory conduct directed at other employees is relevant in establishing a generally hostile environment." *See Finn-Verburg v. New York State Dep't of Labor*, 122 F. Supp. 2d 329, 332 (N.D.N.Y. 2000) (gathering cases). Even in that context, however, the "focus" of hostile-work-environment claims is "on the nature of the workplace" and the treatment of employees. *See Castagna v. Luceno*, No. 09-CV-9332 CS, 2011 WL 1584593, at *6 (S.D.N.Y. Apr. 26, 2011), *aff'd*, 744 F.3d 254 (2d Cir. 2014) and 558 F. App'x 19 (2d Cir. 2014). Salas's allegations of discriminatory conduct directed at non-employees in this case do not plausibly amount to an objectively hostile work environment. Thus, she has not alleged sufficient non-conclusory facts to support her hostile-work-environment claim under Title VII. Defendants' motion as to this

claim is granted without prejudice. To the extent that Plaintiff amends her complaint, she may add additional details to support this claim so long as she does so in good faith.

### 2. Disability-Based Claim

Salas also asserts a disability-based claim for a hostile work environment under the ADA. The materials attached to Salas's original Complaint include allegations that "Calvi makes fun of [Salas's] stuttering . . . on a daily basis," "intimidates [her] on a daily basis," and "mimic[s]" her "on a daily basis." Dkt. 2 at 13, 28–29. Salas also alleges at least one instance where Calvi purportedly mimicked her stutter in front of their coworkers, humiliating and embarrassing her.[3] *Id.* at 24.

Defendants argue that these allegations fail to state a claim for a hostile work environment because they do not specify "the content of [Calvi's] words, her tone, the duration of her alleged conduct, or type or form of intimidation." Ds' Mem. at 24. But the daily, humiliating mocking of a pronounced stutter in front of one's colleagues could well prove to be more than "simple teasing," "offhand comments," and "isolated incidents." *See Petrosino*, 385 F.3d at 223. Unlike Salas's allegation that some unidentified person "repeatedly mocked" her religion in some unidentified way, her allegations that Calvi mimicked her stutter in front of her coworkers in a humiliating way on a daily basis—a very specific and self-explanatory form of bullying—is sufficient to survive a motion to dismiss. Accepting Salas's factual allegations as true and drawing reasonable inferences in her favor, a jury could "conclude that [Salas's] work environment both objectively was, and subjectively was perceived by the plaintiff to be, sufficiently hostile to alter the conditions of employment for the worse." *See Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 604–05 (2d

---

[3] Salas may also be able to rely on evidence of Calvi's other statements and conduct to bolster her ADA claim, because "one type of hostility can exacerbate the effect of another." *Feingold*, 366 F.3d at 151 (citation omitted).

9

Cir. 2006). Plaintiff has therefore plausibly stated a claim for a hostile work environment under the ADA.

**B.    Retaliation Claims**

Defendants next argue that Plaintiff's retaliation claims under Title VII and the ADA must be dismissed. Under Title VII, employers may not "discriminate against" employees because they have "opposed any practice made an unlawful employment practice by this subchapter, or because [they have] made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 89–90 (2d Cir. 2015) (quoting 42 U.S.C. § 2000e–3(a)). The ADA contains nearly identical language, and retaliation claims under the two statutes are analyzed under the same framework. *See Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 222–23 (2d Cir. 2001). Thus, for a retaliation claim to survive a motion to dismiss under either statute, "the plaintiff must plausibly allege that: (1) [her employer] discriminated—or took an adverse employment action— against [her], (2) 'because' [s]he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90 (citation omitted).

**1. Adverse Employment Actions**

Defendants contend that Salas has failed to allege any adverse employment action for her retaliation claims. Ds' Mem. at 14. Salas asserts that she has suffered two of them: the denial of a raise in February 2016 and the "derogatory note" in her personnel file in November 2015. P's Mem. Opp. at 9–10 (Dkt. 29). An adverse employment action in the retaliation context is "any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega*, 801 F.3d at 90 (citation omitted); *see also Hicks v. Baines*, 593 F.3d 159,

10

169 (2d Cir. 2010). This standard is *"the only* consideration" when determining what counts as an adverse employment action for retaliation purposes. *Hicks*, 593 F.3d at 169.

The denial of a raise, like other cuts in pay, amounts to an adverse employment action under this test. *See Nidzon v. Konica Minolta Bus. Sols., USA, Inc.*, 752 F. Supp. 2d 336, 349, 353 (S.D.N.Y. 2010) ("denial of a pay increase"); *see also Vega*, 801 F.3d at 91 ("temporary paycheck reduction"). Whether the written warning in Salas's file, which is all the "derogatory note" purports to be, could similarly dissuade a reasonable worker from complaining of discrimination is less clear. The Court need not decide if the relevant "note" is an adverse action for now, however, because Plaintiff's retaliation claims based on the note fail on other grounds as explained below.

### 2. Protected Activities and Causation

Defendants also argue that Salas has failed to allege that she engaged in a protected activity under either the ADA or Title VII. Employees engage in protected activity when they "ha[ve] a good faith, reasonable belief" that they have made a complaint "opposing an employment practice made unlawful" by Title VII or the ADA. *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (citation omitted); *see also Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999). Employees must also plead a causal connection between the protected activity and some adverse employment action. *Vega*, 801 F.3d at 90.

#### a. Title VII Retaliation Claims

Salas contends that she engaged in a protected activity by complaining about instances where other Division employees mocked her Jewish faith. To avoid dismissal based on such activities, however, Salas "must plausibly allege that the retaliation" for those complaints "was a

11

'but-for' cause of the employer's adverse action." *Id.* This causation standard necessarily means that any of Salas's alleged protected activities must have occurred before the purportedly adverse actions—namely, the November 2015 "derogatory note" or the February 2016 denial of a pay raise.

Salas does not allege that she complained to anyone about religious intolerance towards her at any point prior to February 2016. Instead, she points to several complaints she made about her coworkers' treatment of Hasidic men who came in for fingerprinting, particularly with respect to the September 2015 incident. As Salas concedes in her opposition papers, however, "reporting discrimination by an employer against a non-employee is not cognizable" under Title VII. P's Mem. Opp. at 6; *see Kelly*, 716 F.3d at 14. Complaining of a coworker's discriminatory treatment of nonemployees cannot, as a matter of law, amount to an "unlawful *employment practice*" under the statute. *See Kelly*, 716 F.3d at 15 (citation omitted). Thus, "it should have been plain to the plaintiff and to any other lay person that [her] complaint of retaliation for opposing discrimination by co-employees with respect to the general public was not a complaint about an employment practice." *McMenemy v. City of Rochester*, 241 F.3d 279, 285 n.3 (2d Cir. 2001). To the extent that Plaintiff's complaints to her employer and the EEOC focused on Calvi's (or other employees') alleged mistreatment of Hasidic visitors to the Division, such complaints are not protected activity under Title VII and cannot form the basis of Salas's retaliation claims.

Although Salas does not allege in her current pleading that she complained of religious harassment or discrimination directed at her, Salas's counsel nonetheless argues in opposition to Defendants' motion that Salas made "good faith reports of a variety of discriminatory acts," suggesting that there may have been reports besides those alleged in the current pleading. P's

Mem. Opp. at 6–7. Defendants' motion to dismiss Plaintiff's Title VII retaliation claim is thus granted without prejudice.

### b. ADA Retaliation Claims

Salas also asserts that she has plausibly alleged protected activities based on her complaints about Calvi mimicking her stutter. As an initial matter, Salas does not allege that she made any such complaints before November 2015. Thus, she has failed to allege that the "derogatory note" was placed in her file because of her engagement in a protected activity under the ADA.

Although it is a close question, Salas has adequately alleged that she engaged in a protected activity that caused the denial of her raise in February 2016. *See Vega*, 801 F.3d at 90–91. She does not state in her pleading when she complained about the daily nature of Calvi's alleged harassment, but she sufficiently alleges in her EEOC charge that her internal discrimination complaints about Calvi's daily mocking of her stutter resulted in the denial of her raise in February 2016, clearly suggesting that her complaints preceded that denial. Dkt. 2 at 28–29 ("Ms. Calvi makes fun of my stuttering and she intimidates me on a daily basis. I have reported the harassment to management and nothing was done to stop the harassment. In retaliation for filing my internal discrimination complaints I have not received a raise as all of the other employees in my unit[.]"). Salas also attaches to her original Complaint a letter dated December 14, 2015, in which she informed Edgardo Rivera that Calvi had committed an "act of discrimination when she humiliated and embarrassed" her "by mimicking [her] murmuring disability in front of co-workers." *Id.* at 24. An inference of causation can be drawn from the temporal proximity between the protected activity and the allegedly adverse action, and even a five-month period is "not too long" to create such an inference. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010). At this stage, it is plausible enough that Salas complained about the daily nature of Calvi's harassment

13

between when she wrote her letter to Rivera in December 2015 and when her raise was denied in February 2016. That two-month period "nudge[s]" Salas's causation allegations "across the line from conceivable to plausible." *See Vega*, 801 F.3d at 87. Salas has also adequately alleged the other elements of retaliation under the ADA, because the language she used in her letter indicates that she subjectively believed that Calvi's actions were discriminatory. This belief was objectively reasonable for the reasons explained above. Defendants' motion to dismiss is therefore denied as to Salas's ADA retaliation claim.

### C. Discrimination Claims

Defendants interpret Salas's Complaint as asserting substantive discrimination claims under the ADA. *See* Ds' Mem. at 18 & n.8. Defendants argue that these claims fail because Salas has not plausibly alleged that any adverse employment actions were "imposed [on her] because of her disability." *See Davis v. New York City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015). Defendants further contend that, to the extent Salas makes religion-based discrimination claims under Title VII, those claims also fail on causation grounds. *See* Ds' Mem. at 18 n.8.

To survive a motion to dismiss a Title VII discrimination claim, a plaintiff must "plausibly allege that" her Title VII protected characteristic (here, religion or disability) "was a motivating factor" in her employer's decision to take an adverse action against her. *Vega*, 801 F.3d at 86. She can satisfy this requirement "by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* at 87. An inference of discrimination can be drawn from circumstances including "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus," or "preferential treatment given to employees outside the protected class[.]" *Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996). Although "there is no unbending

14

or rigid rule about what circumstances allow an inference of discrimination when there is an adverse employment decision," *id.*, employees must provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent," *Vega*, 801 F. 3d at 85.

Here, Salas has not alleged that her supervisors or other management at the Division or DOI made any statements about her religion or her disability, let alone statements indicating that those characteristics played a role in their decisions to give her a written warning and to deny her a pay raise. Although Salas alleges that Calvi may have had discriminatory animus toward her, there is no indication that Calvi had anything to do with the purportedly adverse actions against Salas.

Salas comes closer to asserting that the Division and DOI provided "preferential treatment" to other employees, *see Chertkova*, 92 F.3d at 91, because she alleges that she was denied a raise when others in her unit were granted one. But this allegation does not plausibly give rise to an inference of discrimination under the facts of this case. To show that preferential treatment gives rise to an inference of discrimination, a plaintiff normally must allege that the relevant comparators were not members of the relevant "protected group" and were treated less harshly despite being "similarly situated" to the plaintiff. *See Saji v. Nassau Univ. Med. Ctr.*, No. 17-878, 2018 WL 615139, at *4 (2d Cir. Jan. 30, 2018). Salas does not provide any details about the other workers in her unit who received raises besides their names. *See* Dkt. 2 at 29. It is unclear, for example, whether any of them were Jewish, or whether any of them had disciplinary notes in their files. Salas also fails to explain whether, or under what circumstances, other individuals at the Division received written warnings. And she has not alleged any other facts that "give plausible support to a minimal inference of discriminatory motivation" on the part of the administrators who took the relevant, purportedly adverse actions against her. *See Vega*, 801 F.3d at 84 (citation omitted).

In response, Plaintiff asserts that her discrimination claims should survive because she alleges that the relevant adverse actions occurred after she reported to management that she was discriminated against. P's Mem. Opp. at 24. These allegations may go to the plausibility of Salas's retaliation claims, but they do not save her discrimination claims from dismissal. Even so, in light of Salas's *pro se* status, and the admittedly "*minimal* burden" that "alleging facts suggesting an inference of discriminatory motivation" is meant to impose, Salas's discrimination claims are dismissed without prejudice. *See Vega*, 801 F.3d at 85 (citation and internal quotation marks omitted).

## CONCLUSION

For the reasons stated above, Defendants' motion is denied as to Salas's hostile-work-environment claim under the ADA and her related ADA retaliation claim for reporting that purported hostile work environment. The motion is granted with prejudice as to her claims against the individual defendants and without prejudice as to her remaining hostile-work-environment, discrimination, and retaliation claims.

Salas, now represented by counsel, is granted leave to amend her complaint to correct the deficiencies noted in this Opinion, as long as she does so in good faith. Plaintiff shall file her second amended complaint no later than April 30, 2018.

The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 26.

SO ORDERED.

Dated: March 30, 2018
New York, New York

Ronnie Abrams
United States District Judge